**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **RICHARD LOPEZ, ALVARO BLANCO, JESUS DOMOROMO, and ENZZO LOPEZ,** *individually and on behalf of all others similarly situated*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **JANUS INTERNATIONAL GROUP, INC., ANGEL STORAGE CONSTRUCTION, LLC, MARIO ANGEL, and CLARA RAMIREZ.** <br><br> **Defendants.** | Civ. ___ (___)(___) <br><br> **Collective and Class Action Complaint** |

## COLLECTIVE AND CLASS ACTION COMPLAINT

1.      Plaintiffs bring this lawsuit on behalf of themselves and other similarly situated employees to recover unpaid wages against Defendant Janus International Group, Inc. ("Janus") and for unlawful human trafficking, forced labor, and unpaid wages against Defendant Angel Storage Construction, LLC ("Angel Storage"), Defendant Mario Angel, and Defendant Clara Ramirez (collectively, the "Angel Storage Defendants").

2.      Janus coordinates, builds, and oversees construction, and provides materials for storage facilities. It utilizes contractors such as Defendant Angel Storage to recruit employees to build the storage facilities and install Janus equipment in multiple states, including Virginia, Maryland, and Pennsylvania. At all times relevant to this Complaint, Janus retained ultimate supervision and control over the Angel Storage employees laboring on its projects, including directing which projects Plaintiffs worked across state boundaries, and supervising those projects.

3.     The Angel Storage Defendants lured employees, including Plaintiffs—vulnerable, recently arrived Venezuelan immigrants—to work on Janus's projects by offering domestic travel, hourly wages, and temporary housing. The Angel Storage Defendants then forced Plaintiffs, and all others similarly situated, to work long hours under grueling conditions, failed to pay them all wages due, including overtime, and clawed back various deductions, if they paid them at all. Beyond this, the Angel Storage Defendants coerced employees, including Plaintiffs, to continue to work on Janus projects by subjecting them to verbal abuse and threatening them with deportation and withholding of wages if they left, among other coercive tactics.

4.     Defendant Janus, through its business relationship with the Angel Storage Defendants, knowingly and intentionally flouted applicable wage and hour and other laws to maximize its profits while depriving Plaintiffs and other employees of the wages they were legally entitled to receive.

5.     Plaintiffs, on behalf of themselves and similarly situated employees, bring minimum wage and overtime claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), against Defendant Janus and the Angel Storage Defendants.

6.     As required by the FLSA, 29 U.S.C. § 216(b), each Plaintiff has given his or her written consent to become a party to this action. True and correct copies of Plaintiffs' FLSA consent forms will be filed contemporaneously with this Complaint.

7.     Plaintiffs, on behalf of themselves and a class of similarly situated employees, bring class claims of unpaid wages and state minimum wage and overtime violations under Virginia, Maryland, and Pennsylvania law. Specifically, Plaintiffs bring claims under the Virginia Wage Payment and Overtime Laws, Va. Code Ann. §§ 40.1-29 *et seq.* ("VWPA"); the Virginia Minimum Wage Act, Va. Code Ann. §§ 40.1-28.2 *et seq.* ("VMWA"); the Virgina Overtime Wage Act, Va.

Code. Ann. § 40.1-29.2 ("VOWA"); and Va. Code Ann. § 11-4.6 (General Contractor Liability) (collectively, the "Virginia Wage Laws"); the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.* ("MWHL"); the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* ("MWPCL"); and Md. Code Ann., Lab. & Empl., § 3-507.2(c) (General Contractor Liability) (collectively, the "Maryland Wage Laws"); the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101 *et seq.* ("PMWA"); and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1 *et seq.* ("PWPCL") (collectively, the "Pennsylvania Wage Laws"), against Defendant Janus and the Angel Storage Defendants.

8.    Plaintiffs seek to recover unpaid wages and overtime compensation, statutory damages, pre- and post-judgment interest, attorneys' fees and costs, and other appropriate relief to make themselves whole for damages suffered due to Defendants' knowing and intentional violations of law, pursuant to the FLSA, as well as the Virginia Wage Laws, Maryland Wage Laws, and Pennsylvania Wage Laws (collectively, the "State Wage Laws").

9.    Plaintiffs, on behalf of themselves and a class of similarly situated employees, bring anti-trafficking and forced labor class claims under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1581 *et seq.* ("TVPRA"), against the Angel Storage Defendants.

10.    Plaintiffs seek economic, non-economic, and punitive damages against the Angel Storage Defendants for violations of the TVPRA. 18 U.S.C. § 1589.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action under the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the TVPRA, 18 U.S.C. §§ 1581 *et seq.*, pursuant to 28 U.S.C. § 1331.

12.    This Court has supplemental jurisdiction over Plaintiffs' related claims arising under the Virginia Wage Laws, the Maryland Wage Laws, and the Pennsylvania Wage Laws

pursuant to 28 U.S.C § 1367(a) and Article III, Section 2 of the United States Constitution because Plaintiffs' supplemental state law claims are so closely related to their claims under the FLSA that they form part of the same case or controversy as the federal claims.

13.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Virginia, and, in particular, on a Janus project site in Alexandria, Virginia.

14.    The Court has personal jurisdiction over Defendant Janus because (1) at all relevant times, it transacted business in Virginia and (2) as Plaintiffs' employer, its acts and omissions on the Janus project site in Alexandria, Virginia, gave rise to Plaintiffs claims.

15.    The Court has personal jurisdiction over the Angel Storage Defendants because (1) at all relevant times, they transacted business in Virginia and (2) as Plaintiffs' employers, their acts and omissions on the Janus project site in Alexandria, Virginia, gave rise to Plaintiffs claims.

## THE PARTIES

16.    Plaintiff Richard Lopez worked on Janus projects as a construction laborer from September 2022 to November 2022 and was paid an hourly wage rate, when he was paid at all. He worked on Janus projects on jobsites including Alexandria, Virginia and Pittsburgh, Pennsylvania.

17.    Plaintiff Alvaro Blanco worked on Janus projects as a construction laborer from September 2022 to November 2022 and was paid an hourly wage rate, when he was paid at all. He worked on Janus projects on jobsites including Alexandria, Virginia; Aberdeen, Maryland; and Pittsburgh, Pennsylvania.

18.    Plaintiff Jesus Domoromo worked on Janus projects as a construction laborer from September 2022 to November 2022 and was paid an hourly wage rate, when he was paid at all. He

worked on Janus projects on jobsites including Alexandria, Virginia; Aberdeen, Maryland; and Pittsburgh, Pennsylvania.

19.     Plaintiff Enzzo Lopez worked on Janus projects as a construction laborer from September 2022 to November 2022 and was paid an hourly wage rate, when he was paid at all. He worked on Janus projects on jobsites including Alexandria, Virginia; Suffolk, Virginia; Aberdeen, Maryland; and Upland, Pennsylvania.

20.     Defendant Janus is a Delaware corporation with its principal place of business at 135 Janus International Blvd., Temple, Georgia 30179. At all times relevant to this action, Janus has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA. Specifically, Janus operates as a manufacturer, installer, contractor, and construction manager of storage-unit facilities ("Janus projects") on which Plaintiffs and similarly situated employees worked. Upon information and belief, the value of the Janus projects Plaintiffs worked on, or the aggregate of such projects, is greater than $500,000.

21.     Defendant Angel Storage is a Florida limited liability company with its principal place of business at 8249 NW 36th Street, Suite 118, Doral, Florida 33166. At all times relevant to this action, Angel Storage has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA.

22.     Upon information and belief, Defendant Mario Angel is an individual resident of Florida. At all times relevant to this action, Defendant Mario Angel served as the principal co-owner and co-president of Angel Storage, exercised direct operational control over Angel Storage, and had the power to exercise and regularly did exercise the authority to hire/fire Angel Storage employees and make decisions regarding the pay and working conditions of such employees.

23.     Upon information and belief, Defendant Clara Ramirez is an individual resident of Florida. At all times relevant to this action, Clara Ramirez served as the principal co-owner and co-president of Angel Storage, exercised direct operational control over Angel Storage, and had the power to exercise and regularly did exercise the authority to hire/fire Angel Storage employees and make decisions regarding the pay and working conditions of such employees.

24.     At all times pertinent to this action, Defendants were Plaintiffs' employers within the meaning of the FLSA, 29 U.S.C. § 203(g), the Virginia Wage Laws, the Maryland Wage Laws, and the Pennsylvania Wage Laws and/or were employers of Plaintiffs and those similarly situated within the meaning of the FLSA, the Virginia Wage Laws, the Maryland Wage Laws, and the Pennsylvania Wage Laws by exercising substantial control over the Janus projects on which Plaintiffs worked.

## **FACTUAL ALLEGATIONS**

25.     Defendant Janus describes itself on its website as the "leading global provider of self-storage and commercial industrial doors, relocatable storage units, facility automation solutions, and door replacement and self-storage restoration services" and "more than just a door provider," but rather a "total solutions partner" that provides "the ultimate resource for every aspect of [a] project from the exploration of a planning phase to the nitty gritty of assembling and securing" a storage facility. *See About Janus*, JANUS INT'L GRP., https://www.janusintl.com/about (last visited Nov. 28, 2023).

26.     On its Facebook page and website, Janus touts that it has "years of Superintendent and General Contractor experience," and that its "project management team will be there the entire way to help consult, design, construct, coordinate and problem solve" on each individual site. Janus's project management team includes: "Project Managers" who oversee "the scheduling and

installation of Janus related materials across multiple markets"; "Site Supervisors" who ensure "assigned jobs are erected in a timely manner and meet all quality requirements"; and "Construction Managers" who "plan construction projects and oversee their progress along the way in a timely and cost-effective manner." *See Careers: Job Listings*, JANUS INT'L GRP., https://careers-janusintl.icims.com/jobs/search?pr=0&searchCategory=25797&schemaId=&o= (last visited Nov. 28, 2023).

27.     Janus hires and/or coordinates the hiring of contractors for its installation projects. On information and belief, Janus contracted with Angel Storage pursuant to which Angel Storage supplied and supervised labor on Janus projects at all times relevant to this Complaint but is no longer actively engaging in business relations with Angel Storage.

<u>*Wage & Hour Allegations*</u>

28.     Plaintiffs, and all others similarly situated, were recruited by Mario Angel, directly and/or through other Angel Storage personnel, to work on Janus projects as construction laborers through false promises that Angel Storage would subsume the cost of domestic travel to the initial Janus project locations, as well as provide housing accommodations and hourly wages ranging from $11 to $15 per hour. Most of the workers earned $11 per hour.

29.     The Angel Storage Defendants intentionally recruited particularly vulnerable individuals to perform storage-unit construction and installation for Janus projects. Mario Angel, directly and/or through other Angel Storage personnel, recruited immigrants, including recently arrived immigrants living in migrant shelters, who did not speak English, did not have access to stable housing in the United States, and lacked immigration status, to perform construction labor on Janus projects. Most Angel Storage employees had recently arrived in the United States from Venezuela, Guatemala, and other Latin American countries. The Angel Storage Defendants were

aware that many of these workers had their identification documents confiscated by U.S. Immigration officials at the U.S. border, compounding their vulnerability to abuse.

30.     Despite the promises Mario Angel made to Plaintiffs when they were recruited to work on Janus projects, directly and/or through other Angel Storage personnel, Angel Storage did not pay the cost of Plaintiffs' travel expenses, but instead clawed back these costs as deductions from Plaintiffs' paychecks without their written authorization.

31.     The Angel Storage Defendants provided Plaintiffs with small "loans" to purchase food at the start of Plaintiffs' employment, in addition to purchasing tools for Plaintiffs so that they could begin work, but clawed back these costs from Plaintiffs' earned wages without written authorization. As a result, Plaintiffs began their employment in debt to the Angel Storage Defendants.

32.     Plaintiffs worked on multiple Janus projects across multiple states, usually working in crews of four to six workers. More specifically, all four Plaintiffs worked on Janus projects in Virginia; Plaintiffs Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez worked on Janus projects in Maryland; and all four Plaintiffs worked on Janus projects in Pennsylvania. The working conditions and failure to be paid were consistent across each Janus project site on which Plaintiffs worked.

33.     Plaintiffs were assigned to specific Janus project locations based on instructions from Janus. Typically, one or two crews of workers recruited by Angel Storage worked on a Janus project together. Angel Storage personnel sometimes wore Janus uniforms while supervising Plaintiffs on Janus projects and some Angel Storage workers also wore Janus uniforms while laboring on Janus projects. Plaintiffs were highly experienced in constructing/installing Janus materials, such as Janus doors, due to being shepherded from Janus project to Janus project.

Case 1:23-cv-01671-WBP    Document 1    Filed 12/07/23    Page 9 of 39 PageID# 9

34.     Plaintiffs were directed to travel in crews from Janus project to Janus project across different states, sometimes being required to drive through the night after working a 10-hour shift, to then work another 10-hour shift beginning that morning. Plaintiffs were not paid for the time they spent traveling from one assigned job location to another.

35.     As construction laborers, Plaintiffs performed physically demanding tasks such as hauling and cutting heavy construction materials without proper equipment, carrying and lifting dozens of heavy storage unit doors per shift, and disposing of waste. As a result, Plaintiffs suffered injuries and/or severe pain. When Plaintiffs were injured on the job, they were not provided with medical attention.

36.     Plaintiffs were not provided with adequate safety gear for the type of work they performed, but instead were forced to buy their own boots, safety glasses, helmets, and vests, resulting in *de facto* deductions clawed back from their pay without written authorization.

37.     Plaintiffs were not provided potable water at the worksite, as required by applicable law, and were thus forced to bring their own bottled water to the job sites, resulting in *de facto* deductions clawed back from their pay without written authorization.

38.     Plaintiffs worked long and grueling hours, usually from 7:00 am to at least 6:00 pm, with a one-hour meal break, six days per week. Often, this amounted to 60–70 hours per week. Occasionally, Plaintiffs worked until 11:00 pm or 12:00 am or later, and sometimes worked as much as 147 hours in a two-week period.

39.     Plaintiffs were not paid for all time worked and were not paid overtime rates for time worked over 40 hours in a workweek. Specifically, when payday arrived, Defendants Mario Angel and Clara Ramirez fabricated a host of excuses to avoid paying Plaintiffs, such as that Janus had not paid Angel Storage; Angel Storage could not pay Plaintiffs until Plaintiffs found someone

with a bank account who would receive their payment for them; they could not pay Plaintiffs on a holiday; the accountant was on vacation; or they could not pay them before the specific Janus project was complete. The Angel Storage Defendants repeatedly made false promises to pay Plaintiffs at a later date.

40.     There were weeks Plaintiffs were not paid at all for time worked, and thereby were not paid the minimum wage.

41.     When Angel Storage employees quit their positions, they were often not paid their last paychecks. Given Plaintiffs' precarious financial situations, leaving Angel Storage without the significant sum of outstanding wages meant suffering serious financial harm and deprived them of the ability to pay for transportation or housing, impeding the option to seek alternative employment.

42.     At best, the Angel Storage Defendants only ever paid Plaintiffs a portion of the wages they were owed, and never for the total amount of hours they worked during the payroll period and at overtime rates, when applicable. When the Angel Storage Defendants did pay Plaintiffs some portion of the wages owed, they did so in cash, by sending payment to another individual's bank account, or by money transfer through Western Union or Ria—for which Plaintiffs incurred wire transfer costs. The wire transfer costs resulted in *de facto* deductions clawed back from their pay without written authorization.

43.     Plaintiffs were not provided with pay stubs or any other form of documentation regarding the hours they worked and the pay they received. Both the Angel Storage Defendants and Defendant Janus ignored their obligations under the FLSA, Virginia Wage Laws, and Maryland Wage Laws to keep records of the hours worked by Plaintiffs.

44.     Defendants misclassified Plaintiffs as independent contractors despite controlling all aspects of their work and consequently failed to make required deductions from Plaintiffs' paychecks, including for employer-side taxes.

45.     Upon information and belief, Janus's contract with Angel Storage was so economically substandard that it knew or should have known that Plaintiffs were not compensated for the expansive scope of labor performed. Defendants Mario Angel and Clara Ramirez repeatedly told the workers that Janus was the cause of Angel Storage's inability to pay them.

46.     While working on Janus projects, Plaintiffs were required to sign in for their shifts on forms identifying them as Janus employees, work with materials labeled with Janus's insignia, install Janus equipment, and construct and install the storage facilities based on construction plans bearing the Janus logo, which included measurements and the number of units to be constructed.

47.     While working on Janus projects, Plaintiffs observed Janus representatives communicating with Angel Storage personnel at the job sites. Angel Storage personnel regularly communicated with Janus representatives. Plaintiffs regularly observed Angel Storage personnel, including Defendant Mario Angel, take photographs of the worksites and were told these photographs were sent to Janus representatives to demonstrate the project's progress and quality.

48.     Janus representatives regularly visited the job sites at which Plaintiffs worked, wearing Janus-branded shirts. Prior to their arrival, Defendant Mario Angel, directly and/or through other Angel Storage personnel, would inform Plaintiffs that Janus representatives were coming to the worksite.

49.     When the Janus supervisors visited Janus projects, they walked around the worksites, inspected the work, gathered information, took notes, took photographs of the work, looked at the construction plans, checked measurements to confirm work was being performed

pursuant to Janus specifications, consulted with Angel Storage personnel about progress of the construction and installation work that Plaintiffs were performing, provided instructions to Angel Storage personnel about the construction projects, and generally supervised the work performed.

50.     Janus knew or should have known that Plaintiffs were not being paid the wages they were due, as at least several Angel Storage employees complained directly to Janus supervisors about not being paid. For example, opt-in plaintiff Herlyn Montilla complained to a Janus supervisor at one Janus project site that he and others had not been paid; the Janus supervisor said that he would inquire further about the pay issues. Similarly, opt-in plaintiff Nestor Escobar spoke with a Janus supervisor on two occasions, telling him each time that he and other Angel Storage employees had not been paid properly for work on that project. The Janus supervisor said that he would speak with his boss at Janus and that they would be in touch with Angel Storage personnel.

51.     Plaintiffs, and opt-in plaintiffs filed contemporaneously with this Complaint, experienced, and/or heard from other Angel Storage employees on Janus projects that they had previously experienced, highly similar work and working conditions on Janus projects. Specifically, Plaintiffs, opt-in plaintiffs, and other Angel Storage employees laboring on Janus projects:

(a)  Were recruited by or through the same Angel Storage personnel;

(b)  Were supervised by the same Angel Storage principals, Mario Angel and Clara Ramirez;

(c)  Performed construction laborer work on Janus projects and were required to use Janus forms and construction plans;

(d)  Had their work on the projects inspected by Janus personnel;

(e) Witnessed Janus personnel discuss with Angel Storage personnel the progress and quality of the project;

(f) Were not given adequate safety/construction equipment or potable water and had to purchase their own;

(g) Had various deductions clawed back from their wages;

(h) Were required to travel in crews from project site to project site and were not paid for all travel time;

(i) Worked Monday through Saturday from 7:00 am to at least 6:00 pm, with a one-hour lunch break;

(j) Were not paid for all of the hours they worked;

(k) Were not paid overtime rates for hours worked over 40 in a workweek;

(l) Were not paid at all for certain weeks worked;

(m) Had their wages withheld by the Angel Storage Defendants, who provided a litany of excuses; and/or

(n) Complained to Janus personnel about not being paid or they knew their fellow employees had complained to Janus personnel about not being paid.

### *Trafficking Allegations Against the Angel Storage Defendants*

52.     The Angel Storage Defendants intentionally targeted migrant shelters to recruit laborers—including several of the Plaintiffs—for Janus projects because the Angel Storage Defendants knew that the potential workers in the shelters were especially vulnerable. In particular, the Angel Storage Defendants knew that these potential workers had their identification documents confiscated by U.S. Immigration officials, and without them, faced substantial difficulty obtaining bank accounts or credit cards in order to find housing for themselves, among other things.

53.    Like most of Angel Storage's employees, Plaintiffs were recent immigrants who did not speak English, lacked community and/or family in the United States, lacked personal transportation, and did not have stable housing. This made Plaintiffs particularly vulnerable to the Angel Storage Defendants' false promises, including that Angel Storage would pay for travel to job sites, provide housing while they performed the work, and pay stable hourly wages.

54.    Once Plaintiffs were under the control of the Angel Storage Defendants as their employees, the Angel Storage Defendants knowingly and intentionally coerced Plaintiffs to continue working against their will for Angel Storage on Janus projects.

55.    Plaintiffs were verbally abused by Angel Storage personnel while working on Janus projects. Defendant Clara Ramirez repeatedly referred to Plaintiffs as "gonorrhea," "sons of bitches," and "starved Venezuelans." Defendant Mario Angel called Plaintiffs "sons of bitches" and "rats." Supervisors routinely yelled at Plaintiffs to work faster when performing dangerous tasks without proper safety gear and/or equipment.

56.    When Plaintiffs suffered injuries on the job, they were not provided medical attention and instead told to keep working.

57.    Plaintiffs were discouraged from talking with the employees of other installers of Janus projects, further isolating them.

58.    Because the Angel Storage Defendants withheld their wages, Plaintiffs had little to no money for transportation or housing, and as such were dependent on the Angel Storage Defendants to deliver on their promises of wages due before Plaintiffs could leave and find alternative employment.

59.    The Angel Storage Defendants engaged in coercive tactics to induce Plaintiffs, and other similarly situated employees, to continue laboring for Angel Storage on Janus projects. These

14

coercive tactics included economic coercion, housing coercion, threats of deportation, and threats to declare bankruptcy.

60.  Economic Coercion.  While working on Janus projects, the Angel Storage Defendants continually withheld from Plaintiffs the wages they were entitled to receive for work performed. In the absence of their owed wages, Plaintiffs struggled to afford food and lacked the means to seek alternative employment. In other words, Plaintiffs could either continue working for Angel Storage without pay or face homelessness. Specifically, the Angel Storage Defendants:

(a) Engaged in a cycle of failing to pay Plaintiffs, pleading with Plaintiffs to continue working and promising to pay at later dates, providing a litany of excuses as to why they could not yet pay Plaintiffs, and threatening to withhold Plaintiffs' wages in part or in whole if they stopped working on Janus projects;

(b) Threatened Plaintiffs that if they stopped working on Janus projects, Angel Storage would withhold a week of Plaintiffs' wages and use the money to hire new employees;

(c) Paid Plaintiffs only a portion of the wages Plaintiffs were due, if they paid at all;

(d) Paid Plaintiffs small amounts of money that were just enough to purchase food, but clawed back these deductions from Plaintiffs' wages without written authorization; and/or

(e) Failed to pay Plaintiffs any wages while simultaneously coercing them to keep laboring on Janus projects, resulting in Plaintiffs' sum of unpaid wages to continue to accrue.

61.  Housing Coercion. While working on Janus projects, the Angel Storage Defendants packed Plaintiffs into motel rooms, preying on Plaintiffs' inability to seek alternative housing in the absence of their owed wages. Plaintiffs could either continue to work for Angel Storage and

endure the coercive and substandard housing conditions or face homelessness. Specifically, the Angel Storage Defendants:

(a) Packed employees into motels lacking any available cooking facilities, with four or five employees per motel room and two employees per bed;

(b) Required Plaintiffs to share rooms with a foreman, whom they feared reported back to their supervisors, depriving them of privacy;

(c) Paid for the motel rooms only for a few nights at a time, if at all, rather than for the full duration of the workers' stay at a specific location. Upon information and belief, the Angel Storage Defendants did this to make it easier to move employees to other motels while abandoning workers who had quit their employment;

(d) Failed to pay for the motel rooms at all, resulting in Plaintiffs learning they had been kicked out of the motels only after working a long shift. On these occasions, Plaintiffs were left waiting for hours at night—tired, cold, and hungry—for the Angel Storage Defendants to secure alternative lodging; and/or

(e) Failed to provide any housing, forcing Plaintiffs and other workers to sleep in vehicles.

62.    <u>Threats of deportation</u>.  Defendants Mario Angel and Clara Ramirez explicitly and implicitly threatened Plaintiffs with immigration enforcement to prevent them from leaving and/or demanding the wages they were owed. Plaintiffs feared that they would suffer serious immigration-related harm if Mario Angel and/or Clara Ramirez followed through on their threats to call immigration officials. Mario Angel and Clara Ramirez, directly or through other Angel Storage personnel:

(a) Threatened to report Plaintiffs to immigration authorities;

(b) Admonished migrant Plaintiffs not to leave the motels or worksites because "immigration could deport them"; and/or

(c) Referred to previous employees that they had reported to immigration officials, indicating that they could do the same to Plaintiffs.

63.    <u>Threats of bankruptcy</u>. Clara Ramirez told Plaintiffs that if they took any action against the Angel Storage Defendants to demand and/or recover their unpaid wages, Angel Storage would declare bankruptcy. Clara Ramirez told Plaintiffs that this would leave them without any recourse to recover their unpaid wages.

64.    Plaintiffs, and opt-in plaintiffs filed contemporaneously with this Complaint, experienced, and/or heard from other Angel Storage employees on Janus projects that they had previously experienced, highly similar work and working conditions on Janus projects. Specifically, Plaintiffs, opt-in plaintiffs, and other members of the Trafficking Class:

(a) Were recruited by or through the same Angel Storage personnel;

(b) Were supervised by the same Angel Storage principals, Mario Angel and Clara Ramirez;

(c) Had not been given adequate safety/construction equipment or potable water and had to purchase their own;

(d) Incurred injuries and/or severe pain as a result of lacking adequate safety/construction equipment;

(e) Were required to travel in crews from project site to project site without pay;

(f) Worked at least 10 hours per day, 6 days per week;

(g) Were not paid for all of the hours they worked;

(h) Were not paid at all for certain weeks worked;

(i)  Had their wages withheld, accompanied by a litany of excuses from the Angel Storage Defendants;

(j)  Lived in Angel Storage-provided motels, packed into overcrowded rooms and beds;

(k)  Were required to wait long hours at night to access their motel rooms and/or were required to sleep in cars when the Angel Storage Defendants did not provide any housing accommodations;

(l)  Received threats from Mario Angel and/or Clara Ramirez regarding immigration consequences or knew their fellow employees had been threatened with immigration consequences; and/or

(m) Received threats from Clara Ramirez that Angel Storage would declare bankruptcy to avoid paying them or knew their fellow employees had been threatened with Angel Storage declaring bankruptcy.

## <u>COUNT I</u>
**FLSA Unpaid Minimum Wage and Overtime Compensation, 29 U.S.C. §§ 201 *et seq.*
(Brought by all Plaintiffs as a Collective Action against Janus, Angel Storage, Mario Angel, Clara Ramirez)**

65.  Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

66.  Plaintiffs bring this claim on behalf of themselves and all other similarly situated employees, including all non-exempt employees of Angel Storage who were employed to perform construction laborer work on Janus projects since December 7, 2020 and who: (1) were not paid for all hours worked, including but not limited to receiving no wages at all for certain weeks worked; (2) were not paid time and one-half for all hours worked over 40 per workweek; and/or (3) had various deductions—such as domestic travel expenses, the cost of tools/equipment needed for Janus projects,

and potable drinking water at Janus project sites—clawed back from their wages (the "FLSA Collective").

67.    Under Section 6(a) of the FLSA, 29 U.S.C. § 206(a), Defendants were required to pay Plaintiffs minimum wages for hours spent performing construction laborer work on the Janus projects.

68.    Under Section 7(a) of the FLSA, 29 U.S.C. § 207(a), Defendants were required to pay Plaintiffs the greater of time and one-half the hourly wage rate they were promised when hired or the applicable state minimum wage rate for their hours worked in excess of 40 per workweek.

69.    Defendants had a policy against paying Plaintiffs all wages owed to them and have refused to pay the required wages.

70.    Defendants had a policy against paying Plaintiffs overtime wages for hours in excess of 40 per workweek and have refused to pay the required wages.

71.    Defendants failed to pay Plaintiffs for all hours worked and/or failed to pay Plaintiffs any wages for certain weeks worked, thereby reducing Plaintiffs' pay below the minimum wage and overtime rates.

72.    Defendants violated the requirements of the FLSA by failing to pay their employees minimum wages and/or overtime wages for work performed on the Janus projects.

73.    Plaintiffs are entitled to be paid minimum wages in addition to time and one-half their regular rate of pay for those hours worked in excess of 40 hours in a workweek for the work they performed on Janus projects.

74.    Defendants regularly failed to supply the legally required safety equipment and potable water necessary for Plaintiffs to perform the construction laborer work on Janus projects, thereby requiring them to purchase such items themselves and resulting in *de facto* deductions clawed

back from their pay without authorization, reducing their pay below applicable minimum wage rates and overtime wage rates.

75.     Defendants clawed back from Plaintiffs' wages the costs of inbound airfare and tools/equipment—costs that were primarily for the benefit or convenience of Defendants—without written authorization, further reducing their pay below applicable minimum wage and overtime wage rates.

76.     Defendants violated the requirements of the FLSA by clawing back deductions from Plaintiffs' wages, reducing the wages below the minimum wage and overtime wage rates.

77.     At all times material hereto, Defendants failed to maintain proper time and payroll records as required by Section 211(c) of the FLSA and failed to make legally required payments for Social Security and Medicare on behalf of Plaintiffs as mandated by the FLSA.

78.     Defendants failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

79.     Defendants' actions were willful, as evidenced by their knowledge through complaints to their agents that Plaintiffs were not being paid for work performed on Janus projects.

80.     Plaintiffs and the members of the FLSA Collective are entitled to all unpaid wages owed to them for labor performed on Janus projects.

81.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and the members of the FLSA Collective are entitled to an additional amount equal to their unpaid wages as liquidated damages pursuant to 29 U.S.C. § 216(b).

82.     Plaintiffs and all members are entitled to an award of their reasonable attorneys' fees and costs under 29 U.S.C. § 216(b).

## STATE WAGE LAW CLASS ACTION ALLEGATIONS

83.     Plaintiffs bring Counts II through X as a class action under Fed. R. Civ. P. 23 on behalf of themselves and non-exempt employees who were employed to perform construction laborer work on Janus projects during the period of three (3) years before the filing of the Complaint and the date of final judgment (the "Class Members"). The Class allegations for Counts II through V are made as against Defendant Janus and Defendant Angel Storage. The Class allegations for Counts VI through X are made as against all Defendants—Janus, Angel Storage, Mario Angel, and Clara Ramirez. More specifically:

(a) Plaintiffs Richard Lopez, Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez bring claims on behalf of themselves and all Class Members who were not paid minimum wages and overtime, were not paid for all hours worked, were not paid at all for certain weeks worked, had various deductions clawed back from their wages without written authorization, and/or were misclassified as independent contractors, during the period of three (3) years before the filing of the instant Complaint through the date of judgment, pursuant to the Virgnia Wage Laws (the "Virginia Class"), against Defendant Janus and Defendant Angel Storage;

(b) Plaintiffs Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez bring claims on behalf of themselves and all Class Members who were not paid minimum wages and overtime, were not paid for all hours worked, were not paid at all for certain weeks worked, had various deductions clawed back from their wages without written authorization, and/or were misclassified as independent contractors, during the period of three (3) years before the filing of the instant Complaint through the date of judgment, pursuant to the

Maryland Wage Laws (the "Maryland Class"), against Defendant Janus, Defendant Angel Storage, Defendant Mario Angel, and Defendant Clara Ramirez; and

(c) Plaintiffs Richard Lopez, Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez bring claims on behalf of themselves and all Class Members who were not paid minimum wages and overtime, were not paid for all hours worked, and/or were not paid at all for certain weeks worked, during the period of three (3) years before the filing of the instant Complaint through the date of judgment, pursuant to the Pennsylvania Wage Laws (the "Pennsylvania Class"), against Defendant Janus, Defendant Angel Storage, Defendant Mario Angel, and Defendant Clara Ramirez.

84.     **Rule 23(a)(1)—Numerosity.**  Plaintiffs allege on information and belief that the Class consist of at least 50 to 100 construction laborers who were recruited by Angel Storage and performed construction laborer work on Janus projects and, as such, all members cannot practically be joined as named parties herein.

85.     **Rule 23(a)(2)—Commonality.**  This action involves substantial questions of fact and/or law common to the claims of each member of the Virginia Class, Maryland Class, and Pennsylvania Class (collectively, the "State Wage Law Classes" or "State Wage Law Class Members"), including, but not limited to, whether Defendants maintained practices and policies of failing to pay applicable minimum wages and overtime rates, failing to pay for all time worked, and misclassifying employees as independent contractors. More specifically, Defendants:

(a) Supervised and controlled Plaintiffs and Class Members in their work on Janus projects;

(b) Willfully and knowingly failed to pay Plaintiffs and Class Members all wages despite receiving numerous complaints from employees that they were not being paid for work on Janus projects; and/or

(c) Willfully and knowingly misclassified Plaintiffs and Class Members as independent contractors despite controlling all aspects of their work on Janus projects.

86.      **Rule 23(a)(3)—Typicality.**  Plaintiffs' claims are typical of the claims of the State Wage Law Class Members they seek to represent. Each Plaintiff worked hours for which they were not paid on the same grounds applicable to all members of the State Wage Law Classes, were not paid minimum wages and overtime wages on the same grounds applicable to all members of the State Wage Law Classes, and/or were misclassified as independent contractors on the same grounds appliable to all members of the State Wage Law Classes.

87.      **Rule 23(a)(4) and (g)—Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the State Wage Law Classes. Plaintiffs have no interests that are antagonistic to the interests of the State Wage Law Classes as a whole. They are committed to the vigorous prosecution of this action and have retained competent counsel who are experienced in wage and hour law and class action litigation.

88.      **Rule 23(b)(3)—Predominance and Superiority.**  Questions of fact and/or law common to the State Wage Law Class Members predominate over any questions affecting only individual members and a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Defendants have engaged in a common course of conduct directed at the entirety of the State Wage Law Classes.

89.      As used in Counts II–X, "Plaintiffs" refers to the named Plaintiffs and all members of the State Wage Law Classes they represent.

<u>**COUNT II**</u>
**VWPA Unpaid Wages, Va. Code Ann. §§ 40.1-29 *et seq.***
**(Brought by all Plaintiffs as a Class Action against Janus and Angel Storage)**

90.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

91.     Plaintiffs bring this claim on behalf of themselves and all Class Members who worked on Janus projects in Virginia (the "Virginia Class").

92.     The VWPA prohibits employers from withholding "any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee."

93.     Defendants had a policy of not paying Plaintiffs for all hours worked and/or not paying Plaintiffs at all for certain weeks worked, often withholding the wages for their final weeks working for Angel Storage on Janus projects. Defendants have refused to pay the required wages.

94.     Defendants had a policy of clawing back various deductions or *de facto* deductions from Plaintiffs' wages without written authorization.

95.     The VWPA requires that employers provide employees with pay stubs or online accountings of wages that include sufficient information to enable the employee to determine how gross and net pay were calculated.

96.     Defendants had a policy of not providing Plaintiffs with pay stubs or any other information to calculate how the pay they received was calculated.

97.     Defendants' actions violate the VWPA.

98.     Defendants' violations of the VWPA were knowing, willful, and not in good faith, as evidenced by their knowledge through complaints to their agents that Plaintiffs were not being paid for work performed on Janus projects.

99.     Defendants are liable to Plaintiffs for their unpaid wages, plus statutory damages, interest, and reasonable attorneys' fees and costs under Va. Code Ann. §§ 11-4.6(C), 40.1-29(J).

**COUNT III[1]**
**VOWA Overtime Compensation, Va. Code Ann. § 40.1-29.2**
**(Brought by all Plaintiffs as a Class Action against Janus and Angel Storage)**

100.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

101.     Plaintiffs bring this claim for overtime compensation on behalf of themselves and the Virginia Class Members, from July 1, 2021 through the date of final judgment.

102.     The VOWA requires that employers pay employees for all compensable time worked, and at one and one-half the hourly rate for all compensable time worked over 40 hours in a workweek.

103.     Defendants had a policy against paying Plaintiffs for all compensable hours worked and at overtime rates for such work in excess of 40 hours per workweek and have refused to pay the required wages.

104.     Defendants' actions violate the VOWA.

105.     Defendants' violations of the VOWA were knowing, willful, and not in good faith, as evidenced by their knowledge through complaints to their agents that Plaintiffs were not being paid for work performed on Janus projects.

---

[1] On July 1, 2021, the General Assembly enacted the VOWA, Va. Code § 40.1-29.2, mandating payment of an overtime premium for hours worked beyond forty hours in a week. The law mandated double damages and provided for treble damages in cases of knowing violations. It also included a three-year statute of limitations. The General Assembly amended VOWA effective July 1, 2022, to mirror the FLSA as of that date forward.

106.    Defendants are liable to Plaintiffs for their unpaid overtime wages, plus statutory damages, interest, and reasonable attorneys' fees and costs under Va. Code Ann. §§ 11-4.6(C), 40.1-29(J), and 40.1-29.2.

## COUNT IV
### Misclassification and Paycheck Transparency, Va. Code Ann. § 40.1-28.7:7
### (Brought by all Plaintiffs as a Class Action against Janus and Angel Storage)

107.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

108.    Plaintiffs bring this claim on behalf of themselves and the Virginia Class Members.

109.    At all relevant times, Plaintiffs performed services for Defendants for remuneration.

110.    Plaintiffs were misclassified as independent contractors.

111.    Plaintiffs did not meet the "Internal Revenue Service guidelines" for evaluating independent contractor status.

112.    Defendants controlled all aspects of Plaintiffs' work, including assigning project sites, assigning tasks, and setting policies.

113.    Defendants' misclassification resulted in their failure to deduct taxes from Plaintiffs' paychecks, among other things.

114.    Defendants' misclassification deprived Plaintiffs from receiving the benefits and protections to which they were entitled by law.

115.    Defendants knowingly and willfully misclassified Plaintiffs.

116.    Pursuant to Va. Code Ann. § 40.1-28.7:7(A), Defendants were required to provide and/or maintain pay stubs or online accountings of wages including sufficient information to enable the employee to determine how gross and net pay were calculated.

26

117.    Defendants failed to provide Plaintiffs with pay stubs and/or failed to provide enough information on Plaintiffs' pay stubs to calculate how much pay they made. Defendants did not include the number of hours worked performing productive work and/or the wage rate on Plaintiffs' pay stubs or otherwise provide this information.

118.    Defendants' actions were knowing, willful, and in violation of Virginia law.

119.    Plaintiffs are entitled to damages for all wages, salary, employment benefits, or other compensation, attorneys' fees, costs, and any other and further relief this Court deems appropriate.

## COUNT V
**VMWA Minimum Wage, Va. Code Ann. §§ 40.1-28.8 *et seq*.**
**(Brought by all Plaintiffs as a Class Action against Janus and Angel Storage)**

120.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

121.    Plaintiffs bring this claim on behalf of themselves and the Virginia Class Members.

122.    The VMWA requires that employers pay employees the applicable minimum wage rates for all compensable time worked.

123.    Defendants had a policy against paying Plaintiffs for all compensable hours worked and/or paying Plaintiffs any wages for certain weeks worked, thereby reducing their wages below the applicable minimum wage rates.

124.    Defendants had a policy of clawing back various deductions or *de facto* deductions from Plaintiffs' wages without written authorization, reducing their wages below the applicable minimum wage rates.

125.    Defendants' actions violate the VMWA.

126.     Defendants' violations of the VMWA were willful and not in good faith, as evidenced by their knowledge through complaints to their agents that Plaintiffs were not being paid for work performed on Janus projects.

127.     Defendants are liable to Plaintiffs for their unpaid minimum wages, interest, and reasonable attorneys' fees and costs under Va. Code Ann. §§ 11-4.6(C), 40.1-28.12.

## COUNT VI
### MWHL Overtime Compensation, Md. Code, Lab. & Empl., §§ 3-401 *et seq.*
### (Brought by Plaintiffs Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez as a Class Action against Janus, Angel Storage, Mario Angel, and Clara Ramirez)

128.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

129.     Plaintiffs Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez bring this claim on behalf of themselves and all Class Members who worked on Janus projects in Maryland (the "Maryland Class").

130.     Under Md. Code, Lab. & Empl., § 3-415, Defendants were required to pay Plaintiffs for all time worked at the applicable minimum wage and at 1.5 times the usual hourly wage for hours worked in excess of 40 per workweek.

131.     Defendants had a policy against paying Plaintiffs for all compensable hours worked and at overtime rates for such work in excess of 40 hours per workweek and have refused to pay the required wages.

132.     Defendants had a policy of not paying Plaintiffs for all hours worked and/or not paying Plaintiffs any wages for certain weeks worked, often withholding their wages for their final weeks working for Angel Storage on Janus projects, and have refused to pay the required wages.

133.     At all times material hereto, Defendants failed to maintain proper time and payroll records as mandated by Md. Code, Lab. & Empl., § 3-424.

134. Defendants' actions violate the MWHL.

135. Defendants' actions were willful and not in good faith, as evidenced by their knowledge through complaints to their agents that Plaintiffs were not being paid for work performed on Janus projects.

136. Plaintiffs are entitled to all wages, including overtime wages, owed to them, pursuant to Md. Cod, Lab. & Empl., §§ 3-413, 3-415, 3-502 and 3-507.1(a); an additional three times the wages owed, pursuant to Md. Code, Lab. & Empl., § 3-507.1(b); and reasonable attorneys' fees, costs, and expenses, pursuant to Md. Code, Lab. & Empl., §§ 3-427(d) and 3-507.1(b).

**COUNT VII**
**MWPCL Wage Payment, Md. Code, Lab. & Empl., §§ 3-501 *et seq*.**
**(Brought by Plaintiffs Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez as a Class Action against Janus, Angel Storage, Mario Angel, and Clara Ramirez)**

137. Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

138. Plaintiffs Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez bring this claim on behalf of themselves and the Maryland Class.

139. At all relevant times, Defendants were employers covered by the MWPCL, employed Plaintiffs, and were required to comply with the MWPCL wage payment provisions.

140. At all relevant times, Plaintiffs were employees under the MWPCL and entitled to its protections.

141. Defendants did not set a regular pay schedule and failed to timely pay Plaintiffs their required wage rate for all hours they worked.

142. Defendants failed to pay Plaintiffs for all hours worked and/or failed to pay any wages for certain weeks worked, often withholding the wages from their final weeks working for

Angel Storage on Janus projects, reducing their pay below the minimum wage and overtime wage rates.

143.    Defendants had a policy of clawing back various deductions or *de facto* deductions from Plaintiffs' wages without written authorization.

144.    Defendants' actions violate the MWPCL.

145.    Defendants violated the MWPCL repeatedly, willfully, intentionally, and in bad faith, as evidenced by their knowledge through complaints to their agents that Plaintiffs were not being paid for work performed on Janus projects.

146.    Pursuant to § 3-507.1 of the MWPCL, Defendants are liable to Plaintiffs for three times their unpaid wages, interest, attorneys' fees, costs, and any other relief this Court deems appropriate.

## COUNT VIII
### Misclassification, Md. Code, Lab. & Empl., §§ 3-901 *et seq.*
**(Brought by Plaintiffs Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez as a Class Action against Janus, Angel Storage, Mario Angel, and Clara Ramirez)**

147.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

148.    Plaintiffs Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez bring this claim on behalf of themselves and the Maryland Class.

149.    At all relevant times, Defendants were "employers" of Plaintiffs within the meaning of Md. Code, Lab. & Empl., § 3-901.

150.    At all relevant times, Plaintiffs were employed by Defendants for "construction services" within the meaning of Md. Code, Lab. & Empl., § 3-903.

151.    At all relevant times, Plaintiffs performed services for Defendants for remuneration.

152.    Section 3-903 prohibits employers from misclassifying employees who perform construction work as independent contractors.

153.    Defendants knowingly and willfully misclassified Plaintiffs as independent contractors, despite controlling all aspects of their work on Janus projects.

154.    Defendants knowingly misclassified Plaintiffs as independent contractors instead of employees, failing to deduct taxes from their paychecks, among other things.

155.    Defendants' misclassification deprived Plaintiffs from receiving the applicable wage rates, as well as other benefits and protections to which they were entitled by law.

156.    Plaintiffs are entitled to damages caused by such misclassification, including economic damages, an additional amount up to three times the amount of any such damages, reasonable attorneys' fees and costs, and any other relief this Court may deem appropriate, pursuant to Md. Code, Lab. & Empl., § 3-911(c).

### <u>COUNT IX</u>
**PMWA Minimum Wage and Overtime Provisions, 43 P.S. §§ 333.101 *et seq.***
**(Brought by all Plaintiffs as a Class Action against Janus, Angel Storage, Mario Angel, and Clara Ramirez)**

157.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

158.    Plaintiffs bring this claim on behalf of themselves and all Class Members who worked on Janus projects in Pennsylvania (the "Pennsylvania Class").

159.    At all relevant times, Defendants were employers covered by the PMWA, 43 P.S. § 333.103(g), employed Plaintiffs, and were required to comply with the PMWA minimum wage and overtime provisions.

160.    Pursuant to 43 P.S. § 333.104(c), Defendants were required to pay Plaintiffs for all time worked at the applicable minimum wage and at one and one-half for hours worked in excess of 40 per workweek.

161.    Defendants had a policy against paying Plaintiffs for all compensable hours worked and at overtime rates for such work in excess of 40 hours per workweek and have refused to pay the required wages.

162.    Defendants failed to pay Plaintiffs for all hours worked and/or failed to pay Plaintiffs any wages for certain weeks worked, often withholding the wages from their final weeks working for Angel Storage on Janus projects, reducing their pay below the minimum wage and overtime wage rates.

163.    At all times material hereto, Defendants failed to maintain proper time and payroll records as mandated by 43 P.S. § 333.108.

164.    Defendants' actions violate the PMWA.

165.    Defendants' actions were willful and not in good faith, as evidenced by their knowledge through complaints to their agents that Plaintiffs were not being paid for work performed on Janus projects.

166.    As a direct and proximate result of Defendants' failure to pay Plaintiffs wages, including overtime wages, for all hours worked, Plaintiffs have suffered damages, including but not limited to lost wages and lost social security benefits.

167.    Plaintiffs are entitled to all wages owed to them, including overtime wages, reasonable attorneys' fees and costs, pursuant to 43 P.S. §§ 333.104, 333.113, and any other relief this Court may deem appropriate.

## COUNT X
### PWPCL Unpaid and Untimely Wages, 43 P.S. §§ 260.1 *et seq*.
### (Brought by all Plaintiffs as a Class Action against Janus, Angel Storage, Mario Angel, and Clara Ramirez)

168.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

169.    Plaintiffs bring this claim on behalf of themselves and the Pennsylvania Class.

170.    At all relevant times, Defendants were employers covered by the PWPCL, 43 P.S. § 260.2a, employed Plaintiffs, and were required to comply with the PWPCL wage payment provisions.

171.    At all relevant times, Plaintiffs were employees under the PWPCL and entitled to its protections.

172.    Pursuant to 43 P.S. § 260.3, Defendants were required to pay Plaintiffs "on regular paydays designated in advance" and "within 15 days from the end of" the pay period.

173.    Pursuant to 43 P.S. § 260.5, when Plaintiffs separated from their employment with Angel Storage, Defendants were required to pay them all wages or compensation earned "not later than the next regular payday . . . on which such wages would otherwise be due and payable."

174.    Defendants refused to compensate Plaintiffs on a designated and/or timely pay schedule, in violation of the PWPCL.

175.    Defendants refused to compensate Plaintiffs their required wage rate for all hours they worked, including overtime wages for hours worked over 40 in a workweek, in violation of 43 P.S. §§ 260.3, 260.5.

176.    Defendants failed to pay Plaintiffs for all hours worked and/or failed to pay Plaintiffs any wages for certain weeks worked, often withholding the wages from their final weeks

working for Angel Storage on Janus projects, reducing their pay below the minimum wage and overtime wage rates.

177.    Defendants violated the PWPCL repeatedly, willfully, intentionally, and in bad faith, as evidenced by their knowledge through complaints to their agents that Plaintiffs were not being paid for work performed on Janus projects.

178.    Defendants' failure to pay Plaintiffs for all hours worked is not based on a good faith dispute as to their entitlement to wages.

179.    Pursuant to 43 P.S. §§ 260.9a and 260.10, Defendants are liable to Plaintiffs for three times their unpaid wages, liquidated damages, attorneys' fees, costs, and any other relief this Court deems appropriate.

## TRAFFICKING CLASS ACTION ALLEGATIONS
## AGAINST THE ANGEL STORAGE DEFENDANTS

180.    Plaintiffs bring Count XI as a class action under Fed. R. Civ. P. 23 on behalf of themselves and a class of non-exempt employees of Angel Storage who performed construction laborer work on Janus projects during the statutory period, as defined in 18 U.S.C. § 1595 (the "Trafficking Class Members"). More specifically, Plaintiffs Richard Lopez, Alvaro Blanco, Jesus Domoromo, and Enzzo Lopez bring claims on behalf of themselves and all Class Members under the TVPRA (the "Trafficking Class") against Defendant Angel Storage, Defendant Mario Angel, and Defendant Clara Ramirez (collectively, the "Angel Storage Defendants").

181.    **Rule 23(a)(1)—Numerosity.**  Plaintiffs allege on information and belief that the Trafficking Class consists of at least 50 to 100 construction laborers who were recruited by Angel Storage and performed construction laborer work on Janus projects and, as such, all members cannot practically be joined as named parties herein.

182.   **Rule 23(a)(2)—Commonality.**   This action involves substantial questions of fact and/or law common to the claims of each member of the Trafficking Class, including, but not limited to, whether the Angel Storage Defendants knowingly benefited from, participated in, and had knowledge or reason to know of a scheme or venture of exacting forced labor from Plaintiffs and Trafficking Class Members through financial and legal coercion, in violation of the TVPRA.

183.   **Rule 23(a)(3)—Typicality.**   Plaintiffs' claims are typical of the claims of the Trafficking Class they seek to represent. Each Plaintiff was the victim of an unlawful scheme to coerce them to provide labor on Janus projects.

184.   **Rule 23(a)(4) and (g)—Adequacy.**   Plaintiffs will fairly and adequately protect the interests of the Trafficking Class. Plaintiffs have no interests that are antagonistic to the interests of the Trafficking Class as a whole. They are committed to the vigorous prosecution of this action and have retained competent counsel who are experienced in trafficking claims and class action litigation.

185.   **Rule 23(b)(3)—Predominance and Superiority.**   Questions of fact and/or law common to the Trafficking Class Members predominate over any questions affecting only individual members and a class action is superior to other methods for fairly and efficiently adjudicating the controversy. The Angel Storage Defendants have engaged in a common course of conduct directed at the entirety of the Trafficking Class.

186.   As used in Count XI, "Plaintiffs" refers to the named Plaintiffs and all members of the Trafficking Class they represent.

<u>COUNT XI</u>
**TVPRA Forced Labor and Trafficking, 18 U.S.C. §§ 1581 *et seq*.**
**(Brought by all Plaintiffs as a Class Action against Angel Storage, Mario Angel, and Clara Ramirez)**

187.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

188.     Plaintiffs bring this claim on behalf of themselves and the Trafficking Class against the Angel Storage Defendants.

189.     The TVPRA allows victims to bring a civil action against anyone who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a).

190.     The Angel Storage Defendants knowingly and intentionally subjected Plaintiffs to a horrific scheme of coercion and intimidation to induce them to continue working on Janus projects against their will.

191.     The Angel Storage Defendants' conduct constituted a scheme, plan, or pattern intended to cause Plaintiffs to believe that if they did not continue to work on Janus projects, they would suffer serious financial harm because they would not receive the wages due to them and/or face the threat of deportation because they would be reported to immigration officials.

192.     Through their scheme of coercion, the Angel Storage Defendants compelled Plaintiffs to continue working on Janus projects against their will, and thus knowingly obtained and/or provided the labor of Plaintiffs by means of threats of serious financial harm and threatened abuse of the law or legal process in violation of 18 U.S.C. § 1589(a).

193.    Alternatively, and/or additionally, the Angel Storage Defendants benefitted financially from this forced labor and trafficking scheme by way of extracting hard labor from Plaintiffs without paying them anything remotely close to the legal minimums.

194.    As a result of the Angel Storage Defendants' violations of the TVPRA, Plaintiffs suffered substantial physical, emotional, mental, and financial harm.

195.    Plaintiffs are entitled to recover damages arising from the Angel Storage Defendants' violations of the forced labor provisions of the U.S. Code, as well as reasonable attorneys' fees, under 18 U.S.C. § 1595(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

196.    Certify this matter as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) for Count I;

197.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff in the amount of their respective unpaid wages plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

198.    Certify this matter as a class action under Fed. R. Civ. P. 23(b)(3) for Counts II through X and appoint Plaintiffs as the representatives of the State Wage Law Classes and the undersigned attorneys as Class Counsel;

199.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and Virginia Class Member in the amount of their respective unpaid wages and benefits and double unpaid wages and benefits in liquidated damages, as well as an additional amount of treble damages for work performed between July 1, 2021 and June 30, 2022, for the VOWA claim, and reasonable attorneys' fees and costs, pursuant to the Virginia Wage Laws;

200.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and Maryland Class Member in the amount of their respective unpaid wages and benefits, double or triple unpaid wages and benefits in liquidated damages, and reasonable attorneys' fees and costs, pursuant to the Maryland Wage Laws;

201.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and Pennsylvania Class Member in the amount of their respective unpaid wages and benefits, liquidated damages, and reasonable attorneys' fees and costs, pursuant to the Pennsylvania Wage Laws;

202.    Certify this matter as a class action under Fed. R. Civ. P. 23(b)(3) for Count XI and appoint Plaintiffs as the representatives of the Trafficking Class and the undersigned attorneys as Class Counsel;

203.    Grant judgment against the Angel Storage Defendants, jointly and severally, and in favor of each Plaintiff and Trafficking Class Member in the amount of economic, non-economic, and punitive damages, and reasonable attorneys' fees and costs, pursuant to 18 U.S.C. § 1595;

204.    Award Plaintiffs, State Wage Law Class Members, and Trafficking Class Members pre-judgment interest at the legal rate from the date of violations until judgment, and post-judgment interest at the legal rate thereafter; and

205.    Award such other relief as this Court deems just and proper.

Dated: December 7, 2023                    Respectfully submitted,

                                           /s/ Mark Hanna
                                           Mark Hanna (45442)
                                           Nicole Rubin (*pro hac vice* forthcoming)
                                           Murphy Anderson PLLC
                                           1401 K Street NW, Suite 300
                                           Washington, DC 20005
                                           Phone: (202) 223-2620
                                           mhanna@murphypllc.com

nrubin@murphypllc.com

Rachel Nadas (89440)
Matthew K. Handley (*pro hac vice* forthcoming)
Handley Farah & Anderson PLLC
1201 Connecticut Avenue NW, Suite 200K
Washington, DC 20001
Phone: 202-899-2991
rnadas@hfajustice.com
mhandley@hfajustice.com

Jason B. Yarashes (90211)
Kristin F. Donovan (92207)
Rachel C. McFarland (89391)
Legal Aid Justice Center
6402 Arlington Blvd. Suite 1130
Falls Church, VA 22042
Phone: 571-620-5261
jasony@justice4all.org
kristin@justice4all.org
rmcfarland@justice4all.org

*Counsel for Plaintiffs*