IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RICHARD LOPEZ, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-01671 (WBP) |
| | ) |
| JANUS INTERNATIONAL GROUP, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court[1] is Plaintiffs' Motion for Default Judgment ("Motion"; ECF No. 63) against Defendants Angel Storage Construction, LLC ("Angel Storage"); Mario Angel; and Clara Ramirez (collectively, "Angel Defendants"), which the Court finds it can decide on the evidence submitted with the Motion and without the need for an evidentiary hearing. For the below reasons, the Motion is GRANTED.

On December 7, 2023, Plaintiffs[2] filed a Complaint (ECF No. 1) alleging violations of federal and state wage and hour laws (Counts 1-10) and violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") (Count 11). Plaintiffs settled the federal and state wage and hour claims with Defendant Janus International Group, LLC ("Janus"), which was

---

[1] On May 24, 2024, in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties consented to the jurisdiction of the undersigned United States magistrate judge to conduct all proceedings. United States District Court Judge Michael S. Nachmanoff entered an order of reference on May 29, 2024. (ECF No. 54.)

[2] The original Plaintiffs are Alvaro Blanco, Jesus Domoromo, Enzzo Lopez, and Richard Lopez. (*See* ECF No. 1.)

approved by the undersigned on June 14, 2024, and Janus was dismissed with prejudice. (ECF No. 56.)

On July 25, 2024, Plaintiffs filed an Amended Complaint (ECF No. 60), adding eight opt-in Plaintiffs.³ On August 9, 2024, Plaintiffs requested an entry of default as to the Angel Defendants (ECF No. 61), which the Clerk entered on August 13, 2024 (ECF No. 62). On August 15, 2024, Plaintiffs filed a Motion for Default Judgment against the Angel Defendants only on the TVPRA count.⁴ (ECF No. 63.)

I.

Plaintiffs are immigrant workers who worked for the Angel Defendants sometime between 2019 and 2022. (ECF No. 63-1 at 19-20.) Angel Storage is in the business of constructing storage units. (ECF No. 63-1 at 1.) Mario Angel and Clara Ramirez are principal co-owners and co-presidents of Angel Storage. (ECF No. 60 at 6 ¶¶ 22-24.) Angel Defendants contracted with Janus to provide supervised labor on Janus's storage unit construction projects. (*Id.* at 7-8 ¶ 28.) The Angel Defendants recruited Plaintiffs, all of whom had only recently arrived in the United States. (*Id.* at 8 ¶¶ 29-30.) As new migrants to the United States, Plaintiffs were particularly vulnerable—they lacked housing and had no contacts within the United States, they did not speak English, and they were without the means to otherwise provide for themselves and their families. (*Id.*) To recruit Plaintiffs, the Angel Defendants promised hourly wages, free housing, and transportation from their previous location to the jobsite as well as between jobsites. (*Id.*)

---

³ The opt-in Plaintiffs are Herlyn Montilla, Nestor Escobar, Francisco Mendez, Tomas Mendez, Darwin Perdomo, Elias Ramones, Edixon Garcia, and Jesus Martinez. (*See* ECF No. 60.)

⁴ Plaintiffs' Motion does not seek an award of damages for Counts 1-10. (ECF No. 63-1 at n.2.)

2

Plaintiffs accepted the Angel Defendants' offer and began working on construction projects in various states, including jobsites within this district. (*Id.* at 8-9 ¶¶ 31-33.) From the beginning of the relationship between Angel Storage and Plaintiffs, the Angel Defendants failed to provide Plaintiffs with the tools and safety equipment they needed to work on the various projects. (*Id.* at 9-10 ¶ 37.) In some cases, Plaintiffs had to pay for the tools they needed to complete their jobs out of their own pockets; in other cases, Angel Storage deducted the cost of necessary tools from Plaintiffs' pay. (*Id.*) Despite promising to pay for Plaintiffs' air transportation from their original locations to the first jobsite, the Angel Defendants also deducted this cost from Plaintiffs' pay. (*Id.* at 20 ¶ 70.) Once on the jobsite, Plaintiffs were forced to work long hours in harsh conditions. (*Id.* at 10 ¶¶ 38-39.) Plaintiffs often worked over ten hours a day with only a one-hour break for lunch, and they often were not provided water on jobsites. (*See, e.g.*, ECF No. 63-10 ¶¶ 8, 16.) The work required lifting heavy storage doors, which they were forced to perform alone. (*Id.* ¶ 7.) Even when Plaintiffs tried to assist one and other, they were reprimanded for doing so. (*Id.*) Some Plaintiffs were seriously injured on the jobsite or became sick from malnutrition. (*Id.* ¶¶ 16-17; ECF No. 63-8 ¶ 16; ECF No. 63-9 ¶ 17.) Plaintiffs were rarely, if at all, paid for their labor. (ECF No. 63-1 at 15.) The Angel Defendants made excuses about being unable to pay them and instructed Plaintiffs to keep working, threatening to withhold payment. (ECF No. 63-11 ¶ 12.)

The Angel Defendants did not stop at physical abuse; Plaintiffs were also emotionally and psychologically abused by the Angel Defendants. When traveling, Plaintiffs were forced to stay in cramped hotel rooms where they could not speak freely with one another. (ECF No. 63-1 at 7.) The Angel Defendants often failed pay for hotel rooms, forcing Plaintiffs to sleep in vehicles or travel throughout the night, getting no sleep before starting work at the next jobsite.

(*Id.*) When Plaintiffs complained or asked about their pay, the Angel Defendants called Plaintiffs demoralizing names such as "sons of bitches" or "starving Venezuelans." (*Id.* at 11.) If Plaintiffs threatened to stop working, the Angel Defendants threatened to kick them out of the hotel immediately—effectively making Plaintiffs homeless. (*Id.* at 11.) The Angel Defendants also threatened to report Plaintiffs to immigration and to have them deported if they stopped working, if they went outside the hotel rooms, or if they talked with other contractors on the jobsite. (*Id.*) Eventually, Plaintiffs managed to find another employer who picked them up from the hotel, effectively removing them from the Angel Defendants' abuse. (*See, e.g.*, ECF No. 63-8 ¶ 20.) On December 7, 2023, Plaintiffs filed a Complaint against Defendants alleging missing wages and abuse in violation of the TVPRA. (ECF No. 1.)

This Court has jurisdiction over the claims against the Angel Defendants for violating the TVPRA under 28 U.S.C. § 1331 and 18 U.S.C. § 1595, as the TVPRA is a federal statute with civil remedies available in any United States district court. 15 U.S.C. § 1595(a). Virginia's long arm statute provides Virginia courts with jurisdiction over those who conduct business in the state of Virginia. *See* VA. CODE § 8.01-328.1. The Angel Defendants conducted business in this district, establishing the minimum contacts required for the Court to maintain personal jurisdiction over the Angel Defendants. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Venue is also proper, because the Angel Defendants are subject to personal jurisdiction in this district. 28 U.S.C. § 1391(b)(3). On January 5, 2024, Mario Angel was personally served with the summons and Complaint at his place of abode and accepted service on behalf of Clara Ramirez, who lives with him, effecting proper service under the Code of Virginia. (VA. CODE. §§ 8.01-296(1), (2)(a); ECF Nos. 15, 16.) Mario Angel also accepted service as the registered agent of Angel Construction, as permitted by the Code of Virginia. (§

4

8.01-299(1); ECF No. 14.) The Angel Defendants failed to respond within 21 days, and Plaintiffs requested a default against them (ECF No. 26), which the Clerk entered on February 14, 2024 (ECF No. 31). Plaintiffs filed an Amended Complaint on July 25, 2024 (ECF No. 60) and, again, the Angel Defendants failed to respond within 14 days. *See* FED. R. CIV. P. 15(a)(3) (required response to an amended pleading is 14 days after service of amended pleading when time to respond to original complaint has expired). On August 9, 2024, Plaintiffs again requested entry of default against the Angel Defendants, which the Clerk entered on August 13, 2024. (ECF Nos. 61, 62.) On August 15, 2024, Plaintiffs filed a Motion for Default Judgment, seeking judgment against the Angel Defendants for compensatory and punitive damages, as well as attorneys' fees and associated costs. (ECF No. 63.)

II.

Upon entry of default, the facts set forth in the complaint are considered admitted. Still, courts must ensure the facts properly state a claim for relief, under the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See GlobalSantaFe Corp. v. GlobalSantaFe.com*, 250 F. Supp. 2d 610, 612 n. 3 (E.D. Va. 2003). Consequently, the Angel Defendants' failure to respond to the Complaint and Amended Complaint is taken as an admission to the facts outlined above. Damages alleged, unlike factual allegations, are not taken to be true and must be determined independently by the Court. *See JTH Tax, Inc. v. Olivo*, 2016 WL 595297, at *3 (E.D. Va. Feb. 12, 2016).

Plaintiffs assert that the Angel Defendants' physical, mental, and psychological abuse amount to TVPRA violations, 18 U.S.C. §§ 1581-1597. The TVPRA imposes liability upon anyone who knowingly provides or obtains a person's labor or services by any one or a combination of the following: (1) through physical force or restraint, or threats of force or

restraints; (2) through serious harm or threats of serious harm; (3) through abuse or threatened abuse of legal process; (4) or through any scheme, plan, or pattern intended to cause the person to believe that, if they did not perform such labor or services, that person or another would suffer serious harm or physical restraint. *See* 18 U.S.C. § 1589(a). Plaintiffs' theory of liability rests on factors (2) and (3)— serious harms committed against Plaintiffs and abuse or threated abuse of law or legal processes by the Angel Defendants. Under the TVPRA, "serious harm" occurs when any harm, whether physical or non-physical, is sufficiently serious based on the surrounding circumstances such that a reasonable person of the same background and in the same circumstances would be compelled to continue performing labor to avoid such serious harm. *See* 18 U.S.C. § 1589(c)(2). Threatened abuse or abuse of legal process occurs when a defendant uses or threatens to use the law or legal process to exert pressure on another person to cause that person to take some action or refrain from doing some action. *See* § 1589(c)(1).

      Plaintiffs have established that the Angel Defendants violated the TVPRA. Plaintiffs were in vulnerable positions when they met them. Many of them had recently immigrated to the United States and had no job, no housing, or were unable to speak English. *See Muchira v. Al-Rawaf*, 850 F.3d 605, (4th Cir. 2017), *as amended* (Mar. 3, 2017) ("When considering whether an employer's conduct was sufficiently serious . . . we must also 'consider the particular vulnerabilities of a person in the victim's position.'") (citing *United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015)). The Angel Defendants were aware of these vulnerabilities and induced Plaintiffs to work for them—promising to cover their airfare, to provide housing, and to pay their wages. After they began working for the Angel Defendants, Plaintiffs were forced to work with little to no pay, in grueling conditions. *See Doe v. Howard*, No. 1:11-CV-1105, 2012 WL 3834867, at *3-4 (E.D. Va. Sept. 4, 2012) (citing cases where plaintiffs got compensatory

6

damages for labor performed after being induced by false promises) and *Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 525-26 (D. Md. 2016) (false promises of fair working conditions and compensation were enough for damages under the TVPRA violations). In his affidavit, Plaintiff Jesus Martinez describes the Angel Defendants' false promises as evidence that "Mario and Clara knew that we did not have options and took advantage of it." (ECF No. 63-13 ¶ 20.)

Plaintiffs were denied "basic creature comforts" while working for the Angel Defendants. For instance, they were forced to work ten-hour days with only a one-hour break; they became malnourished because they were not paid wages necessary to buy food; the Angel Defendants did not provide water on job sites; Plaintiffs were forced to sleep in overcrowded rooms; and they were denied medical care when they were seriously injured on the job. *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164 (D. Kan. 2018). The Angel Defendants demanded that Plaintiffs perform physically demanding work involving cutting sharp metal and lifting heavy doors. Plaintiffs were forced to perform this hard labor alone; if Plaintiffs tried to help one another with their work tasks, they were reprimanded by their supervisors. This resulted in serious injuries. When Plaintiffs sought medical care for their injuries, the Angel Defendants denied them access to care and told them to keep working. In his affidavit, Plaintiff Jesus Domoromo testified, "I was injured my first week of work when a door fell on my hand and cut it down to the bone. . . . I was given a rag and told to keep working." (ECF No. 63-4 ¶ 11.)

The Angel Defendants also caused Plaintiffs emotional distress by preventing them from talking with one another on jobsites or preventing them from leaving hotel rooms when they were not working. *See Lagasan v. Al-Ghasel*, 92 F. Supp .3d 445, 453-54 (E.D. Va. 2015) (isolation contributed to emotional distress under the TVPRA). Plaintiffs began to feel isolated, scared, and trapped, fearing consequences if they tried to leave or if they voiced their concerns.

(ECF No. 63-2 ¶ 19; ECF No. 63-8 ¶ 18.) For instance, the Angel Defendants threatened to withhold wages and to kick Plaintiffs out of their hotel accommodations if they stopped working, which would have left them homeless with no money to support themselves. In his declaration, Plaintiff Elias Ramones explained, "I wanted to leave but I felt like I was imprisoned. I did not have any money or a place to live." (ECF No. 63-8 ¶ 22.) To maintain their grip on Plaintiffs, the Angel Defendants routinely threatened to report them to immigration authorities and to have them deported. *See id.* and *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 524 (D. Md. 2014) (finding multiple threats of deportation can constitute serious harm). When Plaintiffs asked for their wages, the Angel Defendants not only made excuses but warned Plaintiffs that, if Plaintiffs tried to sue them for their wages, they would declare bankruptcy to avoid payment. The Angel Defendants' continuous threats of deportation and using bankruptcy to avoid paying earned wages amounts to "threatened abuse of legal process" under § 1589(a)(3) of the TVPRA. *See Lipenga*, 219 F. Supp. 3d at 525-26 (citing cases where threats of deportation amounts to abuse of legal process).

III.

The physical, emotional, and psychological harm inflicted on Plaintiffs caused emotional distress, entitling them to compensatory damages. *See Lipenga*, 219 F. Supp. 3d at 531 (listing cases where compensatory damages are awarded for emotional distress for TVPRA harms). As compensation for their suffering, Plaintiffs request $500 per day of work performed in 2022 for each Plaintiff. (ECF No. 63-1 at 18-20.) When considering the Plaintiffs' vulnerable positions, the Court finds such an award to be reasonable. *See Lagasan*, 92 F. Supp. 3d at 458-59. Other courts within the Fourth Circuit have awarded compensatory damages for emotional distress caused by TVPRA in similar amounts. *See id.* (awarding $400 per day in compensatory

8

damages); *Howard*, 2021 WL 3834867 at *4 (awarding $500 per day in compensatory damages for forced labor under TVPRA); *Lipenga*, 219 F. Supp. 3d at 531-32 (awarding $400 per day). As such, the Court awards Plaintiffs $500 per day in compensatory damages, as outlined in the table below.[5]

| Plaintiff | Dates Employed in 2022 | Total Days Employed in 2022 | Total Compensatory Damages |
|---|---|---|---|
| Richard Lopez | 9/22/22-11/7/22 | 46 | 46 x $500= $23,000 |
| Alvaro Blanco | 9/20/22-11/5/22 | 46 | 46 x $500= $23,00 |
| Jesus Domoromo | 9/20/22-11/7/22 | 48 | 48 x $500 = $24,00 |
| Enzzo Lopez | 9/24/22-11/12/22 | 49 | 49 x $500= $24,500 |
| Herlyn Montilla | 9/24/22-11/12/22 | 49 | 49 x $500= $24,500 |
| Nestor Escobar | 9/28/22-12/22/22 | 85 | 85 x $500= $42,500 |
| Elias Ramones | 9/22/22-11/20/22 | 59 | 59 x $500= $29,500 |
| Darwin Perdomo | 9/22/22-11/20/22 | 59 | 59 x $500= $29,500 |
| Edixon Garcia | 9/22/22-11/20/22 | 59 | 59 x $500= $29,500 |
| Francisco Mendez | 1/1/22-12/2/22 | 335 | 335 x $500= $167,500 |
| Tomas Mendez | 7 months | 210 | 210 x $500= $105,000 |

Plaintiffs also request punitive damages in a 2:1 ratio of the compensatory damages. (ECF No. 63-1 at 18-20.) Punitive damages are warranted when the defendant is found liable for conduct involving some element of outrage like a crime. *Lagasan*, 92 F. Supp. 3d at 458 (quoting *Ditullio v. Boehm*, 662 F.3d 1091, 1097 (9th Cir.2011)). The amount awarded should reflect the enormity of the offense, determined by weighing the following: (1) whether the harm was physical or economic; (2) whether defendants acted with reckless disregard of victim's health and safety; (3) whether the conduct was repeated; and (4) whether the conduct was a result of malice or deceit as opposed to mere accident. *Id.* (citing *Howard*, 2012 WL 3834867 at *4.) Violations of TVPRA are considered "particularly depraved" because it creates a cause of action

---

[5] Plaintiffs Elias Ramones, Darwin Perdomo, Edixon Garcia, Francisco Mendez, and Tomas Mendez were only able to provide approximate dates.

9

for "ordinarily intentional and outrageous" tortious conduct, which warrants punitive damages. *Lagasan*, 92 F. Supp. 3d at 458 (citations omitted) and *Ross*, 325 F. Supp. 3d. at 1175 (citation omitted).

The Court finds that Plaintiffs are entitled to punitive damages but only at a 1:1 ratio to compensatory damages. The Court bases its liability finding on the following facts. The Angel Defendants acted with malicious intent by soliciting Plaintiffs to work for them with false promises. *See West v. Butikofer*, No. 19-cv-1039-CJW-KEM, 2020 WL 5245226, at *11 (N.D. Iowa Aug. 18, 2020). The Angel Defendants recklessly disregarded Plaintiffs' health by forcing them to work long hours without water, proper safety tools, proper pay, and medical treatment. *See Lagasan*, 92 F. Supp. 3d at 458 (terrible work conditions for minimal pay warranted punitive damages). The psychological abuse inflicted on Plaintiffs in threatening to have them deported and isolating them from the outside world also demonstrates a reckless disregard for Plaintiffs' health. *See Lipenga*, 219 F. Supp. 3d at 533 (threats of deportation warranted punitive damages).

As for damages, however, the Court finds the proper ratio of compensatory to punitive damages for TVPRA cases within this Circuit to be 1:1, not 2:1. *See id.* ("In TVPRA cases, courts have found that a 1:1 ratio of compensatory to punitive damages under the TVPRA is appropriate." (citing *Lagasan*, 92 F. Supp. 3d at 458)). While Plaintiffs rely on *Doe v. Howard* (a case within this Court's district) to advance their request for a 2:1 punitive damages ratio, that case involved serious crimes of sexual assault and, therefore, is distinguishable from the harms inflicted by the Angel Defendants. *See Howard*, 2021 WL 3834867 at *4-6 (awarding more than a 1:1 ratio but less than a 2:1 ratio where rape and sexual assault was committed). Therefore, the Court awards Plaintiffs punitive damages in the following amounts: Richard Lopez: $23,000; Alvaro Blanco: $23,000; Jesus Domoromo: $24,000; Enzzo Lopez: $24,500; Herlyn Montilla:

$24,500; Nestor Escobar: $42,500; Elias Ramones: $29,500; Darwin Perdomo: $29,500; Edixon Garcia: $29,500; Francisco Mendez: $167,500; Tomas Mendez: $105,000; and Jesus Martinez $9,500.

IV.

For these reasons, Plaintiff's Motion for Default Judgment is GRANTED; and it is further

ORDERED that judgement is entered in favor of Plaintiffs and against Angel Storage Construction, LLC; Mario Angel; and Clara Ramirez, jointly and severally, as follows, which comprises the compensatory and punitive damages described in this order: Richard Lopez $46,000; Alvaro Blanco $46,000; Jesus Domoromo $48,000; Enzzo Lopez $49,000; Herlyn Montilla $49,000; Nestor Escobar $85,000; Elias Ramones $59,000; Darwin Perdomo $59,000; Edixon Garcia $59,000; Francisco Mendez $335,000; Tomas Mendez $210,000; and Jesus Martinez $19,000. And it is further

ORDERED that Plaintiffs must file their any claim for reasonable attorneys' fees and costs on or before October 18, 2024.

Entered this 26th day of September 2024.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia